IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

|  |  |
|---|---|
| Douglas Geer, | Case No. 8:10-cv-2219-HMH-JDA |
| Plaintiff, |  |
| v. | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| Thomas W. McGregor, as personal representative of the Estates of William Fred McGregor and Gail McGregor, |  |
| Defendant.[1] |  |

This matter is before the Court on Defendant's[2] supplemental motion for summary judgment. [Doc. 171.] Plaintiff is proceeding pro se. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(e), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed by individuals proceeding pro se and to submit findings and recommendations to the District Court.

## BACKGROUND

Plaintiff filed this action on August 25, 2010 [Doc. 1] and amended his complaint on August 31, 2010 [Doc. 6] and March 4, 2011 [Doc. 76]. Plaintiff seeks three years of backpay, stock in the McGregors' company, and money Plaintiff invested with the

---

[1]Plaintiff named William Fred McGregor ("William") and Gail McGregor ("Gail"; collectively, "the McGregors") as defendants in this action. [*See* Docs. 1, 76.] Both William and Gail died during the pendency of this case. [Docs. 38, 184.] Defendant Thomas W. McGregor ("Thomas" or "Defendant"), as personal representative of the estates of William and Gail, has been substituted as the proper Defendant pursuant to Rule 25(a) of the Federal Rules of Civil Procedure. [Docs. 43, 187.]

[2]The supplemental motion for summary judgment was filed by Thomas, as personal representative of the estate of William, and Gail. [Doc. 171.] However, Gail died after the supplemental motion for summary judgment was filed, and, as previously noted, Thomas, as personal representative of the estate of Gail, was substituted as the proper Defendant. [Docs. 184, 187.] Accordingly, Thomas is the only remaining Defendant, and his relationship to this action is through his status as personal representative of the estates of William and Gail.

McGregors. [Doc. 76-2 at 2.] Liberally construed, Plaintiff's complaint and amended complaints together allege a federal cause of action pursuant to the Fair Labor Standards Act ("FLSA"), a state cause of action pursuant to the South Carolina Payment of Wages Act ("Payment of Wages Act"), and a state cause of action for breach of contract.

Plaintiff alleges he worked for the McGregors from 2006 through 2010. [Docs. 76 at 3 (indicating he worked for both William and Gail); 76-2 at 3, 4, 11 (providing alleged dates of employment).] He contends he first worked as an auto technician at a car lot located at 2012 West Whitner Street in Anderson, South Carolina,[3] and then at Hunters Financial, Gateway Bail Bonding, ABB Bail Bonding, and finally out of a car doing collections.[4] [Docs. 76 at 3; 76-2 at 3, 11.] Plaintiff further alleges he worked on property located at 1217 North Hampton Road and other properties owned by the McGregors and that Plaintiff worked on Gail's cars and cable and did yard work. [Doc. 76 at 3.]

According to Plaintiff, he and William had an agreement where William put 90 percent of Plaintiff's pay into an account to draw interest. [Doc. 76-2 at 3, 11.] Plaintiff states Gail worked "hand [in] hand" with William and knew Plaintiff was not getting paid. [Doc. 76 at 4.] Plaintiff alleges he learned, while working on his 2009 tax return in 2010, that all William's bank accounts were closed and William had not paid taxes. [Doc. 76-2 at 3, 11.] Thereafter, the McGregors said Plaintiff never worked for them. [Docs. 76 at 4; 76-2 at 4, 11.] William purportedly lost Plaintiff's employment application and did not keep

---

[3] Plaintiff also claims he lived at the West Whitner Street location at some point during his alleged employment. [Doc. 76-2 at 4.]

[4] Plaintiff refers to these businesses interchangeably as Hunters Financial [Doc. 76-2 at 11] and Hunters Finance [*id.* at 2, 3]; Gateway Bail Bonding [*id.* at 3, 11], Gateway Bail Bond [*id.* at 2, 3, 10], and Gateway Bail Bonds [Doc. 76 at 3]; and ABB Bail Bonding [Doc. 76-2 at 3, 11] and ABB Bail Bond [Docs. 76 at 3; 76-2 at 2, 3, 10]. The Court will refer to the businesses as "Hunters," "Gateway," and "ABB."

2

employment records. [Doc. 76-2 at 4, 11.] However, Plaintiff names individuals who knew he worked for William and has a wage loss verification form, signed by William, stating when Plaintiff began working for William and indicating Plaintiff's hours and pay rate. [*Id.* at 3–4, 11–12.]

Plaintiff claims damages in the amount of $234,000 or a sum approved by the Court. [*Id.* at 5, 13.] Plaintiff also requests an award of attorney's fees. [Docs. 72, 98.] Defendant asserts counterclaims against Plaintiff for breach of contract, fraud, quantum meruit, and unjust enrichment. [Doc. 81.]

On September 16, 2011, Gail and Thomas filed a motion for summary judgment that failed to address or mention Plaintiff's FLSA claim. [Doc. 144.] Because Plaintiff's FLSA claim is the only claim affording this Court jurisdiction over the case, the motion was denied with leave to file a supplemental motion addressing that claim. [Docs. 164, 167.] Additionally, the Court ordered Gail and Thomas to address certain aspects of the FLSA claim in the supplemental motion, including, at a minimum, whether Plaintiff was an employee and the McGregors were employers under the FLSA and whether Plaintiff established an FLSA claim under the burden shifting scheme of *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946). [Docs. 164 at 6, 167.] Gail and Thomas filed their supplemental motion for summary judgment on May 16, 2012 [Doc. 171], and Plaintiff filed a response on May 31, 2012 [Doc. 177]. Gail and Thomas filed a reply on June 7, 2012.[5] [Doc. 180.] Accordingly, the supplemental motion for summary judgment is ripe for review.

---

[5]On July 19, 2012, a suggestion of death was filed, noting Gail's death during the pendency of this action. [Doc. 184.] Accordingly, the Court will refer to arguments in the pending supplemental motion for summary judgment and in the reply as being made by Thomas, the only remaining Defendant.

3

## APPLICABLE LAW

**Liberal Construction of Pro Se Pleadings**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the mandated liberal construction means that only if the court can reasonably read the pleadings to state a valid claim on which the complainant could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the complainant's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all

inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id*. Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

Defendant argues Plaintiff's FLSA claim should be dismissed because Landmark Finance is neither an "enterprise" nor an "employer" as defined in the FLSA. [Doc. 171-1 at 1–2]; Plaintiff's state law claims should be dismissed because the Dead Man's Statute prevents Plaintiff from testifying about conversations with the McGregors and Plaintiff offers no other evidence to prove these claims [*id.* at 2–4]; Plaintiff's action for wages should be dismissed because Plaintiff has presented no evidence to prove his claim [*id.* at 4–9]; Plaintiff's breach of contract action should be dismissed because the contract, if it existed, could not be performed in less than one year, was not reduced to writing, and, therefore, violates the statute of frauds [*id.* at 9–11]; and Plaintiff's action against Gail should be dismissed because Plaintiff has no evidence of an agreement with Gail [*id.* at 11–12]. Because the FLSA claim is the only federal claim raised and the Court has jurisdiction over the state causes of action only by exercising supplemental jurisdiction, the Court will first address the FLSA claim.

**Coverage Under the FLSA**

Defendant argues he is entitled to summary judgment because Landmark Finance is neither an "enterprise" nor an "employer" as defined in the FLSA. [Doc. 171-1 at 1–2.] Employers are covered under the FLSA either through individual coverage or enterprise coverage. *Rains v. E. Coast Towing & Storage, Inc.*, 820 F. Supp. 2d 743, 746 (E.D. Va. 2011) ("There are two general ways employers become covered."); *see Diaz v. HBT, Inc.*, No. 11-cv-1856, 2012 WL 294749, at *2 (D. Md. Jan. 31, 2012). Under individual coverage, *an employee who is* "engaged in commerce or in the production of goods for commerce" is covered by the FLSA. 29 U.S.C. § 206(a).[6] Under enterprise coverage, an employee "*employed in an enterprise* engaged in commerce or the production of goods for commerce" is covered by the FLSA, *id.* (emphasis added); however, the enterprise must have an annual gross volume of sales made or business done of $500,000 or more,[7] *id.* § 203(s)(1)(A)(ii); *see Rains*, 820 F. Supp. 2d at 748–49.

---

[6] Section 206, the FLSA's minimum wage provision, states:

> (a) . . . Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates:
>
> (1) except as otherwise provided in this section, not less than –
>
> (A) $5.85 an hour, beginning on the 60th day after May 25, 2007;
>
> (B) $6.55 an hour, beginning 12 months after that 60th day; and
>
> (C) $7.25 an hour, beginning 24 months after that 60th day.

[7] An enterprise may consist of more than one business establishment: "'Enterprise' means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units . . . ." 29 U.S.C. § 203(r)(1).

7

Defendant argues Landmark Finance is neither an "enterprise" nor an "employer" as defined in the FLSA because Landmark Finance neither engaged in interstate commerce nor grossed $500,000 or more in annual sales.[8] [Doc. 171-1 at 1–2.] Thomas avers that Landmark Finance was owned and operated by William, did not produce goods for commerce or engage in interstate commerce, and had less than $500,000 annual gross volume of sales made or business done. [Doc. 179.] Rather, Landmark Finance was a "small business loan company" that "made small loans to people in and around the Anderson community." [*Id.*] Critically, Plaintiff does not identify Landmark Finance as one of the businesses for which he worked [*see* Docs. 76, 76-2 (complaint and amended complaints, failing to mention Landmark Finance and indicating Plaintiff worked at a car lot located at 2012 West Whitner Street and at Hunters, Gateway, ABB, and out of a car doing collections)], and Defendant fails to mention the several businesses Plaintiff identifies as the businesses where he worked. Accordingly, the Court is unable to determine whether the businesses where Plaintiff alleges he worked are employers or enterprises as defined under the FLSA, and issues of fact exist to preclude summary judgment on Plaintiff's FLSA claim.

**Dead Man's Statute**

Defendant next argues Plaintiff's state law claims should be dismissed because the Dead Man's Statute prevents Plaintiff from testifying about conversations with the

---

[8] Defendant focuses his argument on enterprise coverage and does not specifically address individual coverage under the FLSA.

McGregors and Plaintiff offers no other evidence to prove these claims.[9]  [Doc. 171-1 at 2–4.]  The Dead Man's Statute, S.C. Code Ann. § 19-11-20,

> excludes testimony by a witness belonging to one or more of the following classes: 1) a party to the action or proceeding; 2) a person with a legal or equitable interest which may be affected by the action or proceeding; 3) a person who has had such an interest, but which has been in any manner transferred to, or has in any manner come to, a party to the action or proceeding; or 4) any assignor of anything in controversy in the action.

*Davie v. Atkinson*, 352 S.E.2d 517, 518 (S.C. Ct. App. 1987) (citations omitted).  To be excluded, the testimony

> must fall into all three of the following categories: 1) testimony in regard to any transaction or communication between the witness and a person deceased, insane or lunatic; 2) testimony against a party prosecuting or defending the action as executor, administrator, heir-at-law, next of kin, assignee, legatee, devisee, or survivor of such deceased person, or as assignee or committee of such insane person or lunatic; and 3) when the present or previous interest of the witness may in any manner be affected by the testimony or by the event of the trial.

*Id.* (citation omitted).

Here, Plaintiff is a party to the action, and his testimony is about communications between him and William, a person deceased; is against Thomas, a party defending the action as personal representative of William; and would affect Plaintiff's interest at trial. Therefore, the Dead Man's Statute would preclude Plaintiff's testimony regarding transactions or communications between him and William.

---

[9]Defendant concedes Plaintiff would be able to testify about conversations with William to prove the FLSA claim because federal common law does not recognize the Dead Man's Statute. [*See* Doc. 171-1 at 2–3 (citing *Longoria v. Wilson*, 730 F.2d 300, 304 (5th Cir. 1984)).]

With respect to what the Court has construed as Plaintiff's breach of contract claim, Plaintiff asserts he and William had an agreement where William was to put 90 percent of Plaintiff's pay into an account to draw interest [Doc. 76-2 at 3, 11], and Plaintiff later learned that all William's bank accounts were closed and William had not paid taxes [*id.* at 3, 11]; therefore, Plaintiff was allegedly never paid these amounts for his work for the McGregors. Regarding this claim, Plaintiff has conceded that the claim is based solely on conversations with William:

> Q:  And everything is based on what [William] told you or what he said? Is that right?
>
> A:  Yes, sir.
>
> Q:  Was anybody else that works there aware of this agreement that you had for him to take 90 percent of your salary and deposit it into an account?
>
> A:  I don't know. If anybody was it would have been Mr. Tuffour. Maybe Bradley, I don't know, because sometimes they have a conversation when I'm not in the room or whatever. So I don't know what they –
>
> Q:  But as far as you know, nobody else?
>
> A:  No, not as far as I know.
>
> Q:  As you sit here today, you can't say yes, this person knew?
>
> A:  No, I can't.

[Doc. 144-2 at 21:9–23.] Because Plaintiff's breach of contract claim is based solely on conversations with William, but the Dead Man's Statute would preclude Plaintiff's testimony regarding transactions or communications between him and William, the Court

recommends Defendant's supplemental motion for summary judgment be granted as to Plaintiff's breach of contract claim.[10]

With respect to what the Court has construed as Plaintiff's Payment of Wages Act claim, Plaintiff again alleges he was never paid in full for his work for the McGregors. This failure to pay Plaintiff would violate the Payment of Wages Act, which creates a cause of action against an employer by an employee for the employer's failure to pay wages as required under the Act. S.C. Code Ann. § 41-10-80(C). Even though the Dead Man's Statute would preclude Plaintiff's testimony regarding transactions or communications between him and William, Plaintiff has also presented a wage loss verification form that appears to corroborate his claim that he was employed by Hunters. [Doc. 154-1.] Accordingly, although Defendant argues Plaintiff has no evidence beyond his own testimony to prove his claims, in fact, Plaintiff has offered other evidence, the wage loss verification form, to prove his Payment of Wages Act claim, and issues of fact exist to preclude summary judgment on this claim.

**Evidence to Prove Plaintiff's Action for Wages Under the FLSA**

Defendant argues Plaintiff's action for wages claimed to be owed should be dismissed because Plaintiff has presented no evidence to prove his claim. [Doc. 171-1 at 4–9.] The burden of proof standard for FLSA claims was articulated in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–88 (1946), superseded by statute on other

---

[10]Because the Court recommends granting the supplemental motion for summary judgment as to Plaintiff's breach of contract claim on this basis, the Court need not fully address Defendant's argument that he is entitled to summary judgment based on the South Carolina Statute of Frauds. However, the Court notes S.C. Code Ann. § 32-3-10(5), requiring any contract that is not to be performed within one year to be reduced to writing, is inapplicable to a contract for at-will employment. *Weber v. Perry*, 21 S.E.2d 193, 194 (S.C. 1942).

11

grounds as stated in *Carter v. Panama Canal Co.*, 463 F.2d 1289, 1293 (D.C. Cir. 1972), in which the Supreme Court stated,

> An employee who brings suit under [§] 16(b) of the Act for unpaid minimum wages or unpaid overtime compensation, together with liquidated damages, has the burden of proving that he performed work for which he was not properly compensated. The remedial nature of this statute and the great public policy which it embodies, however, militate against making that burden an impossible hurdle for the employee. Due regard must be given to the fact that it is the employer who has the duty under [§] 11(c) of the Act to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed. Employees seldom keep such records themselves; even if they do, the records may be and frequently are untrustworthy. It is in this setting that a proper and fair standard must be erected for the employee to meet in carrying out his burden of proof.
>
>     When the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records. But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises. The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act. In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such

>evidence, the court may then award damages to the employee, even though the result be only approximate.

As previously discussed, Plaintiff has presented a wage loss verification form that appears to corroborate his claim that he was employed by Hunters. [Doc. 154-1.] Defendant fails to address the wage loss verification form in his memorandum in support of the supplemental motion for summary judgment and in his reply.[11] Instead, Defendant maintains Plaintiff has provided no evidence he worked for the McGregors and is uncertain of his dates of employment, hours, and pay rate. [Doc. 171-1 at 5–7.] While Defendant is correct that Plaintiff does not appear to be certain of his exact dates of employment, hours, and pay rate, the wage loss verification form, which was signed by William, indicates Plaintiff was employed by Hunters beginning February 1, 2007 through at least January 31, 2008, with an average weekly salary of $700 from January 13, 2008 through January 31, 2008 and bonus, commission, or overtime of $1,000 during that same time period. [Doc. 154-1.] This form satisfies Plaintiff's burden of showing that he has "in fact performed work for which he was improperly compensated" and "the amount and extent of that work as a matter of just and reasonable inference." *See Anderson*, 328 U.S. at 687. Thus, the burden has shifted to Defendant to put forth evidence of the precise amount of work performed or to negate the reasonableness of the inference to be drawn from Plaintiff's evidence. *See id.* at 687–88. Defendant has failed to meet that burden by neglecting to address the wage loss verification form. As outlined in *Anderson* and in the statute, the

---

[11]Defendant addressed the wage loss verification form in the previously filed reply, arguing the form does not have an employment end date and Plaintiff does not know his dates of employment, hours, and pay rate. [Doc. 160 at 2–3.] However, as discussed herein, under the FLSA, it is not Plaintiff's burden to show the precise amount of uncompensated work.

13

employer has the burden under the FLSA to keep proper records of wages, hours, and other conditions and practices of employment and cannot complain that damages lack the exactness that would have been possible if the employer had kept records. *See id.* at 687–88. Plaintiff has put forth evidence showing he worked for Hunters, and he should not be penalized because he is unable to prove the precise extent of uncompensated work.[12]

**Gail McGregor's Involvement**

Defendant argues Gail should be dismissed because Plaintiff has no evidence of Plaintiff has no evidence of an agreement with Gail and Plaintiff admitted he never had an agreement with Gail. [Doc. 171-1 at 11–12.] This argument addresses the breach of contract claim, which the Court has recommended be dismissed on other grounds. However, Defendant's argument does not address Plaintiff's FLSA or Payment of Wages Act claim, which he brings against Gail, as an owner of the businesses where Plaintiff alleges he worked. [*See* Doc. 76 at 4 (alleging Gail "and her husband w[ere] the owners of these business[es]").] Because Defendant fails to address Plaintiff's FLSA and Payment of Wages Act claims against Gail, the Court cannot recommend that Gail's estate be dismissed from the action.

---

[12] As previously stated, Defendant concedes Plaintiff would be able to testify about conversations with William to prove the FLSA claim because federal common law does not recognize the Dead Man's Statute. Accordingly, with respect to Plaintiff's FLSA claim, Plaintiff could rely on the wage loss verification form and his own testimony about the amount of work performed and conversations with William regarding pay to establish damages.

## CONCLUSION

Wherefore, based on the foregoing, it is recommended that Defendant's supplemental motion for summary judgment be GRANTED as to Plaintiff's breach of contract claim and DENIED as to Plaintiff's FLSA and Payment of Wages Act claims.

IT IS SO RECOMMENDED.

                                          s/Jacquelyn D. Austin
                                          United States Magistrate Judge

January 10, 2013
Greenville, South Carolina